1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                          **CENTRAL DISTRICT OF CALIFORNIA**

10

11   LINDA WOLFE,                    )    NO. EDCV 09-1187 SS
                                     )
12                  Plaintiff,       )
                                     )
13            v.                     )    **MEMORANDUM DECISION AND ORDER**
                                     )
14   MICHAEL J. ASTRUE,              )
     Commissioner of the Social      )
15   Security Administration,        )
                                     )
16                  Defendant.       )
     _____)
17

18                              **INTRODUCTION**

19

20       Plaintiff Linda Wolfe ("Plaintiff") brings this action seeking to

21   reverse the decision of the Commissioner of the Social Security

22   Administration (the "Commissioner" or the "Agency") for denying her

23   application for Social Security Disability Insurance ("SSDI").  The

24   parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction

25   of the undersigned United States Magistrate Judge.  For the reasons

26   stated below, the decision of the Agency is REVERSED and REMANDED for

27   further proceedings.

28

**PROCEDURAL HISTORY**

Plaintiff filed an application for SSDI benefits on February 14, 2006 (Administrative Record ("AR") 58-62).  She alleged a disability onset date of October 1, 2003, (AR 58), due to degenerative disc disease, anxiety, depression, and high blood pressure.  (AR 75).

The Agency denied Plaintiff's claim for SSDI benefits initially on August 14, 2006.  (AR 33-37).  This denial was upheld upon reconsideration.  (AR 43-47).  Plaintiff then requested a hearing, (AR 5), which was held before Administrative Law Judge ("ALJ") F. Keith Varni.  (AR 18-30).  On January 28, 2008, the ALJ conducted a hearing to review Plaintiff's claim.  (Id.).  The Plaintiff appeared with counsel and testified.  (Id.).  Plaintiff's husband, Wayne Wolfe, also appeared and testified.  (AR 27-28).

The ALJ issued an undated decision denying benefits.  (AR 6-8).  Plaintiff sought review of the ALJ's decision before the Appeals Council, which denied her request on May 5, 2009.  (AR 1-3).  The ALJ's decision therefore became the final decision of the Commissioner.  (Id.).  Plaintiff commenced the instant action on August 4, 2009.  Pursuant to the Court's Case Management Order, the parties filed a Joint Stipulation ("Jt. Stip.") on March 30, 2010.

\\
\\
\\
\\

2

1

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

2

3    To qualify for disability benefits, a claimant must demonstrate a
4 medically determinable physical or mental impairment that prevents him
5 from engaging in substantial gainful activity[1] and that is expected to
6 result in death or to last for a continuous period of at least twelve
7 months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing
8 42 U.S.C. § 423(d)(1)(A)).   The impairment must render the claimant
9 incapable of performing the work he previously performed and incapable
10 of performing any other substantial gainful employment that exists in
11 the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir.
12 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

13

14    To decide if a claimant is entitled to benefits, an ALJ conducts
15 a five-step inquiry.  20 C.F.R. § 416.920.  The steps are:

16

17    (1)  Is the claimant presently engaged in substantial gainful
18         activity?  If so, the claimant is found not disabled.
19         If not, proceed to step two.
20    (2)  Is the claimant's impairment severe?  If not, the
21         claimant is found not disabled.  If so, proceed to step
22         three.
23    (3)  Does the claimant's impairment meet or equal the
24         requirements of any impairment listed at 20 C.F.R. Part

25

26    _____
      [1]    Substantial gainful activity means work that involves doing
27 significant and productive physical or mental duties and is done for pay
   or profit.  20 C.F.R. § 416.910.
28

3

404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)  Is the claimant capable of performing his past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)  Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. § 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante, 262 F.3d at 953-54.  If, at step four, the claimant meets his burden of establishing an inability to perform the past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"),[2] age, education and work experience.  Tackett, 180 F.3d at 1100; 20 C.F.R. § 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has both exertional (strength-related) and nonexertional

[2]   Residual functional capacity is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. § 416.945(a).

4

limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. <u>Moore v. Apfel</u>, 216 F.3d 864, 869 (9th Cir. 2000).

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 17). At the first step, the ALJ asserted that Plaintiff had not engaged in substantial gainful activity since October 1, 2003. (AR 11). Although the ALJ noted that the "claimant has, at all times, been capable of performing substantial gainful activity." (<u>Id.</u>).

At step two, the ALJ found that Plaintiff had severe impairment of the musculoskeletal system. (AR 11). However, he specifically found Plaintiff's depressive disorder to be non-severe because it did not cause more than minimal limitation in the Plaintiff's ability to perform basic mental work. (<u>Id.</u>). In making this finding, the ALJ considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). (<u>Id.</u>).

At step three, the ALJ concluded that Plaintiff did "not have an impairment or combination of impairments that [met] or medically equal[ed] one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AR 11).

At step four, the ALJ concluded that based on the entire record, Plaintiff had the RFC to perform medium work. (AR 12). Specifically, he found that Plaintiff could lift fifty pounds occasionally, and twenty-five pounds frequently. (Id.). Plaintiff could stand, walk, and sit for six hours out of the eight-hour work day. (Id.). He found that Plaintiff should not climb ladders, ropes, or scaffolds, and should avoid concentrated exposure to extreme cold and vibration. (Id.). He also noted that Plaintiff had no other limitations affecting her ability to work. (Id.).

Finally, at step five, the ALJ concluded that, Plaintiff was capable of performing past relevant work as "a hair dresser or as a sales person in the paint department at Home Depot." (AR 17). The ALJ explained that this type of work did not require the performance of work-related activities precluded by Plaintiff's RFC. (Id.). Accordingly, the ALJ found that Plaintiff was not disabled, as defined in the Social Security Act, at any time through the date of the decision. (Id.).

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

1    "Substantial evidence is more than a scintilla, but less than a
2    preponderance." <u>Reddick</u>, 157 F.3d at 720.  It is "relevant evidence
3    which a reasonable person might accept as adequate to support a
4    conclusion." <u>Id.</u>  To determine whether substantial evidence supports
5    a finding, the court must "'consider the record as a whole, weighing
6    both evidence that supports and evidence that detracts from the
7    [Commissioner's] conclusion.'" <u>Aukland</u>, 257 F.3d at 1035 (quoting <u>Penny</u>
8    <u>v. Sullivan</u>, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can
9    reasonably support either affirming or reversing that conclusion, the
10   court may not substitute its judgment for that of the Commissioner.
11   <u>Reddick</u>, 157 F.3d at 720-21.

12
13                            **DISCUSSION**

14
15   Plaintiff contends the ALJ erred for several reasons: (1) the ALJ
16   failed to properly consider Plaintiff's obesity, (Jt. Stip. at 3-5); (2)
17   the ALJ failed to properly evaluate medical equivalency at step 3 of the
18   sequential evaluation process by summarily concluding that Plaintiff's
19   impairments did not medically equal a listed impairment, (Jt. Stip. at
20   8-13); (3) the ALJ failed to properly consider the actual mental and
21   physical demands of Plaintiff's past work as a hair dresser and sales
22   person, (Jt. Stip. at 13-15, 17-18); (4) the ALJ failed to properly
23   comply with Social Security Ruling ("SSR") 96-7p regarding the type,
24   dosage, effectiveness, and side effects of medications, (Jt. Stip. at
25   18-19, 23); and (5) the ALJ failed to properly consider Plaintiff's
26   subjective symptoms and make proper credibility findings, (Jt. Stip. at
27   23-27).

28
                                  7

1    The Court agrees with Plaintiff's argument one, three, four and
2    five.  For the reasons discussed below, the Court finds that the ALJ's
3    decision should be reversed and this action remanded for further
4    proceedings.

5

6    **A.   The ALJ Failed To Properly Consider Plaintiff's Obesity**

7

8        Plaintiff argues that the ALJ failed to provide a proper factual
9    analysis that addressed the effect of Plaintiff's obesity in combination
10   with Plaintiff's other impairments.  (Jt. Stip. at 5).  The Court
11   agrees.

12

13       Obesity is no longer a listed impairment, nor was it at the time
14   of the ALJ's decision.  See Revised Medical Criteria for Determination
15   of a Disability, Endocrine System and Related Criteria, 64 F.R. 46122
16   (1999) (effective October 25, 1999) ("We are deleting listing 9.09,
17   "Obesity," from appendix 1, subpart P of part 404, the "Listing of
18   Impairments" (the listings).").  However, an ALJ must still determine
19   the effect of obesity upon a claimant's other impairments and its effect
20   on her ability to work and general health.  Celaya v. Halter, 332 F.3d
21   1177, 1182 (9th Cir. 2003).  Social Security Ruling 02-01p[3] states that
22   adjudicators must consider obesity in all steps of the sequential
23   evaluation process and in combination with other impairments.

24

25       [3]   Social Security Ruling 02-1p, Evaluation of Obesity, was
26   published in the Federal Register on September 12, 2002.  That ruling
27   superseded the Commissioner's previous ruling regarding the evaluation
     of obesity, Social Security Ruling 00-3p, first published on May 15,
28   2000.

8

On February 6, 2003, Plaintiff was referred to an orthopedic surgeon, Ronny G. Ghazal, M.D., ("Dr. Ghazal") at Arrowhead Orthopaedics. (AR 129). After examining Plaintiff, Dr. Ghazal, opined that Plaintiff needed physical therapy, as well as a weight loss program. (AR 137). Plaintiff's main treating physician, Steven Wilson, M.D., ("Dr. Wilson") noted several times between 2005 and 2007 that Plaintiff needed to exercise and diet. (AR 237, 235, 290, 311).

Dr. Nicholas Lin, an internal medicine doctor, from the Alto Medical Group examined Plaintiff on July 28, 2006. (AR 184-89). Dr. Lin noted that Plaintiff was 200 pounds with a height of 62 inches. (AR 186). He also noted that Plaintiff was able to "perform tandem gait [but] with slight difficulty due to her being overweight." (AR 188).

On June 15, 2007, after Plaintiff's vital signs were taken at Beaver Medical Group, it was noted that Plaintiff weighed 194 pounds with a height of 62 inches indicating she was a "mildly obese" female. (AR 301). On June 27, 2007, Plaintiff was seen at Beaver Medical Group by David B. Martin, M.D., ("Dr. Martin"). (AR 299). After examining Plaintiff, Dr. Martin concluded that Plaintiff was "obese in the mid section with a waist size of probably close to 40 inches." (Id.). Dr. Martin recommended that Plaintiff lose weight and exercise. (Id.).

The record contained several references or inferences to Plaintiff's obesity. (AR 137, 164, 200, 237, 244, 290, 299, 301, 311). She was consistently advised by medical providers to modify her lifestyle and lose weight. (AR 137, 164, 237, 238, 244, 290, 290, 311).

Notwithstanding this evidence of obesity, the ALJ did not analyze the effect of Plaintiff's obesity on Plaintiff's other impairments. (AR 9-17). This omission was error. Celaya, 332 F.3d at 1182; see also Orn v. Astrue, 495 F.3d 625, 636-7 (9th Cir. 2007)(discussing proper way for ALJ to consider obesity); Barrett v. Barnhart, 355 F.3d 1065, 1068-69 (7th Cir. 2004) (ALJ erred in not considering effect of Plaintiff's obesity on claimant's arthritis); Clifford v. Apfel, 227 F.3d 863, 873 (7th Cir. 2000) (evidence of obesity required ALJ to consider weight issue with the aggregate effect of claimant's other impairments). Because the ALJ is required to adequately explain his evaluation and the combined effect of a claimant's impairments, the ALJ's passing reference of Plaintiff's obesity falls far short of weighing the effect of that obesity on Plaintiff's severe impairment of the musculoskeletal system. Barrett, 355 F.3d 1068-69).

On remand, the ALJ must consider the effect of obesity upon a Plaintiff's other impairments and its effect on her ability to work and general health.

**B.    The ALJ Failed To Properly Consider The Actual Mental And Physical Demands Of Plaintiff's Past Work As A Hair Dresser And Sales Person**

Plaintiff argues that the ALJ failed to properly consider the actual mental and physical demands of Plaintiff's past work as a hair dresser and sales person in finding that Plaintiff could perform her past relevant work. (Jt. Stip. at 13-15, 17-18). The Court agrees.

10

Although the claimant has the burden of proof at step four, the ALJ still has the duty to make the requisite factual findings to support his conclusion. <u>Pinto v. Massanari</u>, 249 F.3d 840, 844 (9th Cir. 2001). He must make specific findings as to the claimant's RFC, the physical and mental demands of the past relevant work, and the relation of the RFC to the past work. <u>Id.</u> (citing SSR 82-62). The ALJ can meet this burden by comparing physical and mental demands of the past relevant work with the Plaintiff's actual RFC. <u>Id.</u> at 845.

Here, the ALJ did not discuss the demands of Plaintiff's work as a hairdresser or sales person in the paint department at Home Depot other than to assert that he "s[aw] no reason why the claimant cannot return to all of her past relevant work, and perform it as actually and generally performed." (AR 17). The ALJ did not address whether Plaintiff's past relevant work was "medium" work. (AR 9-17). There is no indication what evidence, if any, supported that conclusion, as the ALJ did not cite any evidence of record or a reliable source of vocational data. (<u>Id.</u>).

At a minimum, the ALJ's decision violated the Commissioner's own policy directive:

> Evaluation [at step four] requires careful consideration of the interaction [between] the limiting effects of the person's impairments(s) and the physical and mental demands of [] her past relevant work]...[] The decision as to whether the claimant retains the functional capacity to perform past

work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision...[E]very effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.

Adequate documentation of past work includes factual information about those work demands which have a bearing on the medically established limitations. Detailed information about strength, endurance, manipulative ability, mental demands, and other job requirements must be obtained as appropriate. This information will be derived from a detailed description of the work obtained from the claimant, employer, or other informed source.

SSR 82-62.

In order to obtain an adequate evidentiary basis for a finding as to the physical and mental demands of Plaintiff's past work, the ALJ may also choose to consult the Dictionary of Occupational Titles or seek help from a vocational expert. He did neither here. In sum, the ALJ failed to support his step-four analysis with substantial evidence and erred by not making any factual findings required to support the conclusion that Plaintiff was physically and mentally capable of meeting the demands of her past relevant work as required by SSR 82-62. See Pinto, 249 F.3d at 847.

**C.** **The ALJ Failed To Properly Comply With SSR 96-7p Regarding The Type, Dosage, Effectiveness, And Side Effects Of Medications**

Plaintiff argues that the ALJ failed to evaluate the dosage, effectiveness, and side effects of Plaintiff's pain medications. (Jt. Stip. at 19). The Court agrees.

When the ALJ is evaluating Plaintiff's limitations, he must consider the side effects of medication. (SSR 96-7p). Social Security Ruling 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms." 20 C.F.R. § 404.1529(c)(3)(iv); 416.929(c)(3)(iv). The Ninth Circuit has observed that an ALJ must "consider all factors that might have a significant impact on an individual's ability to work." Erickson v. Shalala, 9 F.3d 813, 817 (9th Cir. 1993)(citing Varney v. Secretary of HHS, 846 F.2d 581, 585 (9th Cir.), relief modified, 859 F.2d 1396 (1988)). Such factors "may include side effects of medications as well as subjective evidence of pain." Erickson, 9 F.3d at 818.

There is substantial evidence in the record documenting that Plaintiff experienced side effects from her medications. (AR 2-25, 75, 80, 237, 239, 311). Specifically, Plaintiff indicated that she had problems with sleepiness, fatigue, and being able to concentrate. (AR 25, 75, 80). Evidence in the record also supports Plaintiff's assertion that she suffered work-impairing side effects from her medications. (AR 75). She stated that while working at Home Depot, her pain medication

made her "drowsy" and she would "fall asleep." (Id.). Plaintiff stated that she was fired from her job at Home Depot because she would become drowsy and fall asleep due to her pain medication. (Id.).

In May 2005, Plaintiff complained that her medication made her "sleepy all the time." (AR 239). On July 18, 2005, Dr. Wilson noted that "[Plaintiff] has had worsening pain, probably due to the fact that she has been working, resulting in needing more pain med[ication]. This increasing dosage has caused some daytime sleepiness and made it difficult for her to function on an 8-[hour] job." (AR 237). On January 15, 2007, Plaintiff complained of fatigue. (AR 311). In response, Dr. Wilson decreased her Duragesic medication to reduce her fatigue. (Id.). On June 27, 2007, Dr. Martin noted that Plaintiff tired easily. (AR 298).

During the hearing, Plaintiff testified that her impairments affected her ability to concentrate. (AR 24-25). She also testified that she experienced fatigue while doing household activities. (Id.). She explained that she needed to lay down a lot, and "spread things out throughout the week" to take care of her home. (Id.).

The reporting of Plaintiff's symptoms would be consistent with the quantity and type of medications Plaintiff was taking. During the relevant time period, Plaintiff sought treatment at various times for back pain, stress, anxiety, depression, allergies, panic attacks, headaches, leg cramps, hypertension, sleeplessness, restless legs, high blood sugar, and cholesterol. (AR 126-312). Over the course of

treatment, Plaintiff was prescribed various combinations and dosages of medication; and at the time of the hearing, Plaintiff testified that she was taking multiple medications at a time, including Gabapentin, Effexor, Fentanyl, Plavix, Buspirone, Diovan, Indomethacin, and Duragesic Patch. (AR 23-24). There is further evidence to show that Plaintiff was also prescribed or given Vicodin, Paxil, Vytorin, BuSpar, Klonopin, Hydrochlorothiazide, Titrate, Zoloft, Clonazepam, Cymbalta, Allegra, Neurontin, and Lorazepam. (AR 126-312).

In his decision, the ALJ briefly acknowledged Plaintiff's complaints regarding the side effects of her medications, but did not expressly consider the impact of these side effects on Plaintiff's ability to work. (AR 14, 16). While there is substantial evidence in the record, both from Plaintiff's statements that she made in the administrative proceedings, to complaints she made to her doctors, that she had serious side effects from medications, her statements were not considered by the ALJ. (AR 9-17). Yet, an analysis of medication side effects is required both by the Commissioner's own regulations and by controlling Ninth Circuit law. (See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(2008); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); Erickson, 9 F.3d at 818 ("The ALJ must consider all factors that might have a 'significant impact on an individual's ability to work [,]'" including medication side effects). As the record contains substantial evidence that Plaintiff was prescribed various combinations and dosages of medications, for lengthy periods of time, that would

15

likely cause significant side effects, it was error for the ALJ not to expressly consider those side effects in his evaluation of Plaintiff's disability claim.

On remand, the ALJ must expressly consider the impact of Plaintiff's medications on her ability to work. If necessary, the ALJ should utilize a medical expert to testify about the effect of Plaintiff's medications on her ability to work.

**D.   The ALJ Failed To Provide Clear And Convincing Reasons For Rejecting Plaintiff's Subjective Pain Testimony**

Plaintiff claims that the ALJ failed to properly consider Plaintiff's subjective complaints by "dismissing the longitudinal history that establish[ed] Plaintiff's multiple attempts at seeking treatment in an effort to obtain relief from her symptoms." (Jt. Stip. at 27). The Court agrees.

The ALJ did not properly evaluate relevant factors in the credibility analysis of Plaintiff, including Plaintiff's repeated attempts to get relief from pain and the drugs she was prescribed for same. Carpenter v. Astrue, 537 F.3d 1264, 1268 (10th Cir. 2008)(ALJ should address the plaintiff's repeated attempts to find pain relief and drugs prescribed for pain relief before rejecting plaintiff's pain testimony). Plaintiff's medical records show that Plaintiff continuously pursued relief for pain, without any doctor disbelieving her claims of pain or questioning her credibility. (AR 126-312).

16

Beginning in October 2002, Plaintiff continually sought treatment from Dr. Rains for pain related to her back. (AR 126-35). During that time, Dr. Rains prescribed Vicodin, Robaxin, Voltaren, and Nortriptyline to help alleviate Plaintiff's pain. (Id.). Dr. Rains also referred Plaintiff to Dr. Ghazal, an orthopedic surgeon. (AR 129). On February 2, 2003, Dr. Ghazal diagnosed Plaintiff with "degenerative disc disease of L5-S1," and noted that Plaintiff would benefit from "anti-inflammatory medications and [] from epidural steroid injections." (AR 137). Between February 24, 2003 to April 24, 2003, Plaintiff was treated by Dr. Lowell Reynolds, Medical Director for Pain Management at Loma Linda University Health Care for her lower back pain. (AR 151-56). It was noted on Plaintiff's Initial Pain Management Evaluation that she had previously been treated with various non-steroidal anti-inflammatory drugs ("NSAID"), as well as physical therapy. (AR 152). Plaintiff indicated that the NSAID's did not help, and that the physical therapy was overall helpful, but "the relief was negated when she returned to work." (Id.). Dr. Reynolds recommended Plaintiff be treated with epidural steroid injections, and Plaintiff consented to the procedure. (AR 156).

After Plaintiff requested a re-evaluation for treatment options of her chronic back pain, she was seen by John C. Steinman, D.O., FAOAO, ("Dr. Steinman"). (AR 168). On October 14, 2003, after evaluating Plaintiff, Dr. Steinmann discussed the different available alternatives for her care, he specifically recommended that Plaintiff exercise and modify her activities. (AR 164).

Plaintiff's medical records also confirmed that she repeatedly sought treatment at In Your Best Interest Medical Clinic, Inc., with Dr. Wilson, between February 20, 2003 to March 8, 2007. (AR 220-269, 308-312). During that time, Plaintiff's chief complaint was chronic pain related to her back. (Id.). Dr. Wilson prescribed her various combinations and dosages of medication, and over the course of time, continually changed the combinations and dosages of Plaintiff's medications to alleviate her pain. (Id.). Plaintiff's pain medications included Vicodin, a Duragesic patch, and Neurontin. (AR 265-69). Between June 15, 2007 and October 29, 2007, Plaintiff sought treatment at Beaver Medical Group by David B. Martin, M.D., ("Dr. Martin"). (AR 287-304). After examining Plaintiff, Dr. Martin recommended that Plaintiff lose weight and exercise, adjusted her pain medications, and gave her a mental health referral. (AR 299).

Plaintiff repeatedly and often sought treatment for her pain symptoms since October 2002. (AR 128, 131, 133, 134, 145-50, 151-56, 231-32, 237-240, 266, 268, 304). There is substantial evidence in Plaintiff's records to show that she was treated by at least five different doctors in the course of five years to seek treatment in an attempt to alleviate her pain related to her back or leg. (AR 220-269, 308-312). As demonstrated above, Plaintiff tried different treatments, including physical therapy, epidural injections, a Depo-medro injection, a pain management evaluation, an orthopedic evaluation, diet, exercise, and many different combinations and dosages of prescription medication. (Id.).

The Social Security Ruling makes it clear that a longitudinal medical record of the course of symptoms over time, or of any treatment and its success or failure, is important information. SSR 96-7p.

In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for symptoms and to follow that treatment once prescribed lends support to the allegations of symptoms for purposes of judging the credibility of the individual's statement. (Id.). Persistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications, trials of a variety of treatment modalities in an attempt to find one that works or that does not have side effects, referrals to specialists, or changing treatment sources may be a strong indication that the symptoms are a source of distress to an individual and generally lend support to an individual's allegations of intense and persistent symptoms.

SSR 96-7p. Thus, it was error for the ALJ not to expressly consider Plaintiff's persistent attempts to find relief from her pain, her willingness to try various treatments for her pain, and her frequent contact with physicians concerning her pain-related complaints, the case must be remanded to remedy this defect.

On remand, the ALJ must expressly consider these relevant factors in assessing Plaintiff's subjective complaints.

19

**E.    Remand Is Required to Remedy Defects in the ALJ's Decision**

Remand for further proceedings is appropriate where additional proceedings could remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038, 121 S. Ct. 628, 148 L. Ed. 2d 537 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).

**CONCLUSION**

Consistent with the foregoing, IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision.  IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: April 12, 2010


                                    _____/S/_____
                                    SUZANNE H. SEGAL
                                    UNITED STATES MAGISTRATE JUDGE

20